IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**WAL-MART STORES, INC**                                                            **MOVANT**

v.                                                   **CASE NO. 07-0039**

**DR. NICHOLAS S. VIDALAKIS;**
**NANCY G. VIDALAKIS; PERRY N.**
**VIDALAKIS; GEORGE N. VIDALAKIS;**
**J. REES JENSEN, AND JRJ INVESTMENTS, L.C.**                   **RESPONDENTS**

**O R D E R**

On March 7, 2006, Developers Diversified Realty Corp., filed the underlying action for declaratory judgment in the United States District Court for the Northern District of Ohio. The suit arises out of a real estate transaction between Developers Diversified Realty Corp. (Plaintiff) and Dr. Nicholas S. Vidalakis, et al. (Defendants) involving the sale of a property development known as the Meridian Development which was eventually sold by the Plaintiff to Wal-Mart. Plaintiff is seeking a judicial declaration stating that the Defendants are not entitled to any additional consideration under the terms of the purchase agreement between the parties. Defendants, represented by Calfee, Halter & Griswold, LLP ("the Calfee firm"), filed a Counterclaim in which they allege, in part, that they are entitled to additional monetary consideration from Plaintiff due to the fact that Plaintiff "deliberately allocated the artificially low value of the Meridian Parcel 1 and the Gibson Parcel for the purpose of artificially lowering the Additional Development Property Consideration Defendants would receive for Meridian, since a loss on the sale of Meridian Parcel 1 to Wal-Mart Stores, Inc. (Wal-Mart) directly decreased the amount of Earn-Out consideration due to Defendants." (Doc. # 10-2).

In connection with that action, Defendants served a subpoena duces tecum on Wal-Mart and certain of its employees requesting depositions of those employees and the production of documentation related to all real estate transactions between the Plaintiff and Wal-Mart from January 1, 1998, through December 31, 2002. (Doc. # 1-1, 1-2, 1-3, 1-4). In response to the subpoenas, Wal-Mart filed a motion to quash the subpoenas and a motion to disqualify the Calfee firm in this court. (Doc. # 1, 9). Presently before this court is Wal-Mart's Motion to Disqualify the Calfee firm. (Doc. #10). The defendants have filed a response to said motion, and the matter is ready for determination. (Doc. # 14).

The decision whether to grant or deny a motion to disqualify an attorney rests in the sound discretion of the district court and will be reversed only upon a showing of abuse of that discretion. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir.1999) (internal quotations omitted and alteration in original). It is a fundamental responsibility of this court to supervise the attorneys who appear and practice before it. *See Federal Deposit Ins. Corp. v. Amundson*, 682 F.Supp. 981, 984-985 (D. MN 1988). Disqualification is a measure vital to the protection and preservation of the integrity of attorney-client relationships; yet it is a drastic measure that should only be imposed when it is clearly required by the circumstances. *Norman v. Norman*, 333 Ark. 644, 652-653, 970 S.W.2d 270, 273 - 274 (Ark..1998). "Courts have long recognized the importance of allowing a litigant the attorney of his choosing," and a plaintiff's choice of counsel has generally been given substantial deference. *Reschke v. Baldwin Transfer Co., Inc.*, 2007 WL 2071564, * 1 (E.D. Ark. July 19, 2007). Thus, the role of the court is to balance the current client's right to counsel of choice with the former client's right to protection of confidences transmitted, or likely to have been acquired, during the prior representation. *Norman*, 333 Ark. at 652-653, 970 S.W.2d at 273-274. "The court should not

quickly deprive plaintiffs of their freedom to choose the advocate who will represent their claims, nor lightly dismiss the trust and confidence plaintiffs have placed in their chosen counsel." *Reschke*, 2007 WL 2071564, at * 1.  We must remain mindful of the fact that "a disqualification, though aimed at protecting the soundness of the attorney-client relationship, also interferes with, or perhaps destroys, a voluntary [attorney-client] relationship by depriving a litigant of counsel of his own choosing--oftentimes affecting associations of long standing. *Norman*, 333 Ark. at 652-653, 970 S.W.2d at 273-274.  Thus, the cornerstone principle in all conflict cases is whether prejudice will result to the client as a result of the conflict of interest.  *See Wilburn v. State*, 346 Ark. 137, 56 S.W.2d 365, 369 (Ark. 2001).  Further, due to the potential for abuse by opposing counsel, motions to disqualify counsel are subject to "particularly strict judicial scrutiny." *Harker v. Comm'r. of the Internal Revenue,* 82 F.3d 806, 808 (8th Cir.1996).

Wal-Mart contends that the Calfee firm should be disqualified from representing the Defendants due to their long-standing attorney-client relationship with Wal-Mart.  It alleges that since 2001, Wal-Mart has retained the Columbus office of the Calfee firm to assist them with regard to at least seventy-eight legal matters, seventy-seven of which are environmental or real estate related cases.  Although Wal-Mart is not a party to the present litigation, it contends that the Defendants have insinuated that Wal-Mart might have conspired with the Plaintiff regarding this matter.  While Wal-Mart admits that it had severed its relationship with the Calfee firm just prior to filing this motion, it contends that it was a current client of the Calfee firm at the time the discovery requests were served.  As such, it is Wal-Mart's position that the Calfee firm is representing clients whose interests are directly adverse to one another and that Rule 1.7 of the Arkansas Model Rules of Professional Conduct applies to this matter.  Rule 1.7 provides as follows:

> a) Except as provided in paragraph in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A current conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer,
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing.

AR. MODEL RULES OF PROF'L CONDUCT R 1.7.

On the other hand, the Defendants argue that because Wal-Mart fired the Calfee firm prior to filing its motion, Rule 1.9, relating to former clients, rather than Rule 1.7, should apply in this case. Rule 1.9 provides as follows:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
> (1) whose interests are materially adverse to that person; and
> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;
> unless the former client gives informed consent, confirmed in writing.
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

AR. MODEL RULES OF PROF'L CONDUCT R. 1.9(A).  The Defendants go on to state that the environmental counseling provided by Calfee attorneys to Wal-Mart for its new and expansion retail sites in the State of Ohio is entirely distinguishable from the litigation services provided to Defendants in defending against Plaintiff's declaratory judgment action and prosecuting Defendants' counterclaims against Plaintiff.  They also state that the purchase of the Meridian Parcel 1/Gibson Parcel in Idaho, which is the subject of this suit, is completely unrelated to the environmental matters addressed in Calfee's prior representation of Wal-Mart.  (Doc. #14).

To clutter the matter even further, however, the Calfee attorneys state that the determination as to whether Wal-Mart is a current or former client of the Calfee firm is not essential to the determination of this case because the Calfee firm has hired an Arkansas firm to assist in this matter. They propose that a Chinese wall can be erected by allowing the Arkansas firm to take the depositions and handle all discovery matters related to Wal-Mart, thus protecting the interests of both Wal-Mart and the Defendants.  While Wal-Mart agrees that a Chinese wall can be erected, it objects to the level of participation that the Calfee firm proposes to have with regard to advising and consulting with the Arkansas firm regarding discovery requests and the formulation of deposition questions.

For the purposes of a disqualification analysis, a client should be considered an "existing client" of the attorney if there was an ongoing attorney-client relationship at the time the complaint was filed, even if the attorney-client relationship concludes prior to the filing of the motion to disqualify.  *See, e.g., Fund of Funds v. Arthur Andersen & Co.,* 435 F. Supp. 84, 95 (S.D. N.Y. 1977), *aff'd in part, rev'd in part on other grounds,* 567 F.2d 225 (2d Cir. 1977); *Unified Sewerage Agency of Washington Co. v. JELCO Inc.,* 646 F.2d 1339, 1345 n.4 (9th Cir. 1981); *Ehrich v.*

*Binghampton City School District,* 210 F.R.D. 17, 25 (N.D. N.Y. 2002) (the present-client rule "applies if an attorney simultaneously represents clients with differing interests even though the representation ceases prior to filing the disqualification motion"); *Gen-Cor, LLC v. Buckeye Corrugated, Inc.,* 111 F. Supp.2d 1049 (S.D. Ind. 2000) (Generally, "a client is a current client if the representation existed at the time the complaint was filed."). While we do believe that Wal-Mart is a current client of the Calfee firm, we also note that the interests of Wal-Mart and the Defendants are not directly adverse at this time. The record makes clear that Wal-mart is a not a party to this litigation. Further, Wal-Mart has not demonstrated that its representation by the Calfee firm is in any way related to the representation of the Defendants by the Calfee firm. *Reschke v. Baldwin Transfer Co., Inc*. 2007 WL 2071564, *1 (E.D.Ark. 2007). Wal-Mart hired the Columbus office of the Calfee firm to provide it with environmental counseling for certain new and expansion retail sites in the state of Ohio. Specifically, Christopher Jones, Senior Counsel for the Columbus Office of the Calfee firm, states the firm reviewed environmental assessment reports, handled environmental permitting issues, evaluated potential risks from environmental concerns, and assisted with mobilizing emergency responses to environmental hazards. (Doc. # 14, [Exhibit A](), p.3). *See S. D. Warren Co. V. Duff-Norton*, 302 F. Supp. 2d 762, 771 (W.D. Mich 2004) (holding that a general knowledge of a company's inner workings acquired during another representation is not sufficient to warrant disqualification); see also *International Paper Co. v. Lloyd Mfg. Co.*, 555 F. Supp. 125, 136 (N.D. Ill. 1982)(citing *Westinghouse Electric Corp. v. Kerr-McGee Corp*, 580 F. 2d 1311, 1322 (7th cir. 1978)).

      The cause of action, between Plaintiff and Defendants, arises out of the Plaintiff's sale of a parcel of land in the state of Idaho to the Wal-Mart. There has been no evidence presented to

establish that the real estate and environmental work performed by the Calfee's Columbus office has any connection to the present litigation. As such, we do not believe that disqualification is mandatory. However, we are cognizant of the fact that the discovery requests in question could result in the discovery of information that could well place the parties in opposition to one another.[1] This is of particular concern, given the fact that it is not yet clear that the Defendants have no claims against Wal-Mart or the transactions handled by the Calfee firm on behalf of Wal-Mart will not become an issue in the case.

Although we find no present direct adversity, balancing the interest of all parties involved, we believe that the use of outside, independent counsel to handle the depositions, discovery exchange, and all trial issues involving Wal-Mart is the most reasonable solution. As pointed out by the Defendants, the American Bar Association has recognized and approved the use of local counsel to cure a conflict that may arise when counsel serves third party discovery on a client:

> There are possible circumstances . . . where it would be particularly unfair to the litigation client to require it to choose between . . . discovery of an important third party witness, on the one hand, and replacing trial counsel on the other. In such circumstances the desirability of some practical solution to the problem of the lawyer's (and the lawyer's colleagues') conflicting loyalties, and the more fundamental problem of the conflicting interest of the two clients involved is patent. In some instances, a sufficient solution may be to provide for other counsel, also representing litigation counsel, to deal with the client-witness: where local counsel as well as principal counsel are involved in a litigation, the disqualification applying to one of these will not ordinarily affect the other. In other circumstances, a satisfactory solution may be the retention of another lawyer solely for the purpose of examining the principal lawyer's client.

---

[1] Should the discovery process lead the defendants to determine that Wal-Mart was a party to the Plaintiff's alleged wrongdoing, then Rule 1.7 would clearly come into play, which states that "Absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated." AR. MODEL R. PROF'L CONDUCT R. 1.7, Comment 6 (2007).

American Bar Association Standing Committee on Ethics and Professional Responsibility Formal Opinion 92-367, Lawyer Examining a Client as an Adverse Witness, or Conducting Third Party Discovery of the Client (October 16, 1992) (internal citations omitted). Several federal courts have also approved the use of local counsel or co-counsel to cross-examine former clients of primary counsel as an effective and appropriate cure of any potential conflict and/or to safeguard against the misuse of the client's confidential information. *See In re Motion to Quash Deposition Subpoena to Lance Wagar*, Case No. 1:06-MC-127, 2006 WL 3699544, *9 (N.D.N.Y. 2006) (Having co-counsel conduct the deposition of a subpoenaed third-party witness, who was also a former client of the main defense counsel, is an "efficacious safeguard" against any potential misuse of confidential information acquired in the prior representation); *Sykes v. Matter*, 316 F. Supp. 2d 630, 633 (M.D. Tenn. 2004) (ruling that it is appropriate to retain another counsel to perform the cross-examination of a former client); *Swanson v. Wabash, Inc.*, 585 F. Supp. 1094, 1097 (N.D. Ill. 1984) (no conflict of interest possible if former client is cross-examined by other counsel).

  Because both parties are in agreement that a properly erected Chinese wall would protect the interest of all parties in this matter, we believe that a Chinese wall can and should be utilized in order to prevent a conflict of interest from arising. However, a properly erected Chinese wall will require that the Arkansas firm have absolutely no exposure to any information of any kind relating to Calfee's prior representation of Wal-Mart, or any information obtained therefrom. See *Sykes v. Matter*, 316 F. Supp. 2d at 636.

  Although we hold disqualification of the Calfee firm continuing with the representation of Defendants is not mandated at this time, we are mindful that information garnered at deposition may place Defendants and Wal-Mart in adverse positions. In this unlikely event, we simply remind the

Calfee firm of their ethical obligations under Rule 1.7.  Accordingly, Wal-Mart's motion to disqualify the Calfee firm is hereby DENIED.

IT IS SO ORDERED this 17th day of December 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE