IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WAL-MART STORES, INC                                                                    PLAINTIFF

V.                          NO.  5:07-MC-00039-RTD

DR. NICHOLAS S. VIDALAKIS, ET AL
                                                                                        DEFENDANTS

**O R D E R**

Before the court is the Plaintiff's Motion to Quash subpoenas and Motion for Protective Order (Doc. 1) filed October 24, 2007.  The Plaintiff has filed a Brief (Doc. 2) and the Defendants have filed a Response.

**Background:**

On March 7, 2006, Developers Diversified Realty Corp (DDR) filed a declaratory action lawsuit in the United States District Court for the Norther District of Ohio, Eastern Division against Dr. Nicholas S. Vidalakis, et al.  (Developers Diversified Realty Corp. v Dr. Nicholas S. Vidalakis, et al, 1:06-cv-0234) The Defendants filed a counterclaim against DDR.

Pursuant to a gain sharing agreement between DDR and Vidalakis, DDR was to develop and sell three certain properties to Wal-Mart. Vidalakis claims that DDR manipulated the allocation of the sales proceeds to avoid paying the Vidalakis' their fair share of the Earn-Out Agreement.

Vidalakis contends that "transactions with Wal-Mart permeated DDR's development of the Earn-Out Properties and created real opportunities for DDR to shift value and profit away from the Earn-Out Properties (where DDR would be obligated to share the gain and into other

1

DDR owned properties unburdened by the Earn-Out Agreement (where it could retain the entire value for itself).  Accordingly, Defendants seek to assess the customary practices and various real property transactions between DDR and Wal-Mart that occurred during the relevant time periods of the transactions between DDR and Wal-Mart at the Earn-Out Properties, 1998-2002".  *See Respondents' Opposition to Wal-Mart Stores, Inc.'s Motion to Quash Subpoenas Duces Tecum and for Protective Order, page 5*.

The Defendants have identified at least six other real property transactions between DDR and Wal-Mart during the relevant time periods that they contend are relevant to the Earn-Out Properties.  *See Respondents' Opposition to Wal-Mart Stores, Inc.'s Motion to Quash Subpoenas Duces Tecum and for Protective Order, page 6*. The subpoenas seek documents and testimony relating to these shopping centers/locations along with the Earn-Out Properties.  The Defendants seek to depose Wal-Mart, pursuant to a Rule 30(b)(6) deposition, and three Wal-Mart employees, *i.e.* Chris Callaway, Robert Bray and Karen Roberts. The Defendant contends that all three of the Wal-Mart employees were directly and personally involved in one or more of the DDR transactions and have personal, non-privileged information regarding the transactions.

Wal-Mart contends that the subpoenas should be quashed as to Ms. Roberts and Mr. Bray because of the apex doctrine, that the subpoenas are overly broad, unduly burdensome and seek information that is neither relevant nor reasonable calculated to lead to discovery of admissible evidence, the subpoenas seek Wal-Mart's confidential, proprietary business information and that the attorney-client privilege precludes Ms. Roberts from testifying.

**Discussion:**

(a) Wal-Mart first contends that the court should quash the subpoena for Ms. Roberts and

Mr. Bray because of the apex doctrine. The "apex doctrine" protects high-level corporate officials from deposition unless (1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted. *See Van Den Eng v. Coleman Co., Inc*., 2005 WL 3776352, at *2 (D. Kan. 2005). This doctrine is normally aimed at high level decision makers who have no particular direct knowledge of the facts pertaining to the particular lawsuit. For example, in *Community Federal Sav. & Loan Ass'n v. FHLBB*, 96 F.R.D. 619 (D.D.C.1983), a case in which plaintiffs sought deposition testimony of several high-level agency administrators, the court held that when a party seeks to depose high-level decision makers who are removed from the daily subjects of the litigation, the party must first demonstrate that the would-be deponent has "unique personal knowledge" of the matter in issue. *Baine v. General Motors Corp.* 141 F.R.D. 332, *334 (M.D.Ala.,1991)

     Fed.R.Civ.P. 26(c) provides that the Court may, upon a showing of good cause, "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  The court certainly recognizes that taking depositions of high level corporate employees has the potential for abuse and that the court should be attune to that potential.  *Folwell v. Hernandez*, 210 F.R.D. 169, 173 (M.D.N.C. 2002)

     This is not a case where a personal injury plaintiff is seeking to depose the CEO of Chrysler Corporation (*Mulvey v. Chrysler Corp*., 106 F.R.D. 364, 366 (D.R.I.  1985)), or where a policy holder was suing for improper denial of a claim and sought to depose a high level executive.  (*Evans v. Alstate Ins. Co.*, 216 F.R.D. 515, 518-519 (N.D. Okla. 2003)).

     It appears in reviewing the emails and letters attached to the Response filed by the

Defendant that Ms. Roberts and Mr. Bray had significant direction and input into the various real estate transactions. *See Respondents' Opposition to Wal-Mart Stores, Inc.'s Motion to Quash Subpoenas Duces Tecum and for Protective Order, Exhibits D-H.* Ms. Roberts is the Real Estate Manager for Wal-Mart and evidently a decision maker concerning many aspects of the contracts with DDR. (Exhibit E) The Crystal River project and the Pensacola Florida project was executed by J. Robert Bray and attested to by Karen Roberts.  (Exhibit F) These contracts involved large sums of money as well as complex issues and these two witnesses may have unique and necessary information concerning these contracts and how they relate to the contracts at issue. Wal-Mart has provided the affidavit of J. Chris Calloway which states that he is primarily responsible for the oversight of Real Estate Managers and that Robert Bray and Karen Roberts are "generally" not involved in the negotiations or the details of the transaction. (Doc. 12, Exhibit 2, page 2) The same affidavit acknowledges that Karen Roberts may be involved in transactions at a "high level". The affidavit of Mr. Calloway does not dissuade the court that the Robert Bray and Karen Roberts may have knowledge that Mr. Calloway does not possess.

(b) Wal-Mart next contends that the subpoenas are overly broad, unduly burdensome and seek information that is neither relevant to the underlying lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

Judge Nancy Vecchiarelli, the Magistrate Judge for the Northern District of Ohio, Eastern Division, entered an order which stated that the Defendant "is entitled to some information regarding Wal-Mart sales that occurred between October 31, 1998 and December 31, 2001, subject to an agreement of the parties regarding search terms". (Case 1:06-cv-00234-SO, Doc. 105)  The Defendant's subpoena to Wal-Mart is for the time period from "January 1, 1998

through December 31, 2002".  This is clearly outside the time period contemplated by the Magistrate Judge in the Order entered on February 9, 2007 and this court will not expand the order previously entered concerning the scope of discovery.  **The information requested will be limited to the time period from October 1, 1998 through December 31, 2001.**

In addition, the Defendant is asking for information pertaining to "the land sale and/or lease transaction and/or development transactions between Wal-Mart and DDR that relate in any way" to the **eleven named** developments. Wal-Mart makes the conclusory assertion that it will be costly and that it will suffer an undue burden in compiling the information.  Wal-Mart attaches no affidavit or computation that would assist the court in determining that the process will be costly.  Wal-Mart asserts that Wal-Mart and DDR have engaged in "thousands of real estate transactions during the requisite period" and that the information requested cannot be relevant to the single transaction in dispute.  (Doc. 2, page 9) It would appear that the Plaintiff has narrowed the scope of the "hundreds" of transactions between DDR and Wal-Mart to less than a dozen.

It is well-established that the scope and conduct of discovery are within the sound discretion of the trial court. *Marroquin-Manriques v. Immigration and Naturalization Serv.*, 699 F.2d 129, 134 (3d Cir.1983). The Federal Rules of Civil Procedure permit discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Discovery is not limited solely to admissible evidence but encompasses matters which "appear[ ] reasonably calculated to lead to the discovery of admissible evidence." See id; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). "Relevance is construed broadly and determined in relation to the facts and circumstances of each case." *Hall v. Harleysville Ins. Co.*, 164 F.R.D. 406, 407 (E.D.Pa.1996).

It is impossible for the court to say that information concerning similar transactions between Wal-Mart and DDR are not relevant to the pending lawsuit.

(c) Wal-Mart contends that the subpoenas should be quashed because the subpoenas seek Wal-Mart's confidential, proprietary business information.

"Confidential business information has long been recognized as property." *Carpenter v. United States*, 484 U.S. 19, 26, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987). "Because of the intangible nature of a trade secret, [however,] the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002, 104 S.Ct. 2862, 2872, 81 L.Ed.2d 815 (1984). Public disclosure of trade secrets extinguishes the owner's property rights. Id. *In re Remington Arms Co., Inc.* 952 F.2d 1029, *1032 (C.A.8,1991)

The Defendant seeks testimony concerning "all due diligence, evaluation, analyses, or investigations conducted by Wal-Mart from January 1, 1998 through December 21, 2002 regarding DDR and each of the DDR Transactions". The court will limit this to the time period established by the previous order to October 31, 1998 through December 31, 2001. Wal-Mart asserts that the information is "highly confidential and gives Wal-Mart a competitive advantage over other retailers". (Doc. 2, page 10)

There is currently in place a Stipulated Protective Order, filed May 1, 2006, that provides that it "shall be applicable to and govern the handling of all documents, testimony and other information, including all copies, excerpts and summaries thereof, produced, given or filed during discovery and/or produced by non-parties pursuant to subpoena, or voluntarily in lieu of subpoena, in this matter, which contain confidential and proprietary information. (Case 1:06-cv-

00234-SO, Doc. 34, paragraph 1) Wal-Mart makes no reference to the Order in its motion and does not address how the order impacts its request to quash. The Defendant is not in direct competition with Wal-Mart and it would appear that the current protective order will adequately protect Wal-Mart.

(d) Wal-Mart claims that the attorney-client privilege precludes Ms. Roberts from testifying in this matter.

Ms. Roberts evidently serves as General Counsel of Wal-Mart Realty. Wal-Mart contends that as a result of this position "[A]ny confidential communication between Ms. Roberts and Wal-Mart, or any of its Associates, is completely privileged from discovery. (Doc. 2, page 11)

The attorney-client privilege is one of the oldest recognized privileges for confidential communications. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888). The privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." Upjohn, supra, at 389, 101 S.Ct. at 682. The issue presented here is the scope of that privilege. *Swidler & Berlin* v. U.S. 524 U.S. 399, *403, 118 S.Ct. 2081, **2084 (U.S.Dist.Col.,1998)  The attorney-client privilege attaches only when the attorney acts in that capacity. *See Bay State Ambulance*, 874 F.2d at 27-28;  *United States v. United Shoe Mach. Corp.*, 89 F.Supp. 357, 358-59 (D.Mass.1950). *Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*  60 F.3d 867, *884 (C.A.1 (Puerto Rico),1995).  In the present case it would appear that some of Ms. Roberts actions are clearly as Real Estate Manager and that her function

as corporate counsel is not clear and distinct. In several of the letters she sent to DDR she refers to herself only as the Real Estate Manager for Wal-Mart Stores, Inc. (*See Respondents' Opposition to Wal-Mart Store's, Inc.'s Motion to Quash Subpoenas Duces Tecum and for Protective Order, Exhibits E & F*.) Even in the letters which DDR send to Ms. Roberts where she is referred to as Corporate Counsel it is clear that she is performing the function of Real Estate Manager. (*See Respondents' Opposition to Wal-Mart Store's, Inc.'s Motion to Quash Subpoenas Duces Tecum and for Protective Order, Exhibits G*.)

  (e) Wal-Mart also seeks a protective order to Protect Wal-Mart, Ms. Robert, Mr. Bray, and Mr. Callaway from Defendants' Onerous Discovery.

  The party seeking a protective order has the burden to show good cause for it. *Reed v. Bennett*, 193 F.R.D. 689, 691 (D.Kan.2000). *General Dynamics Corp. v. Selb Mfg. Co.* 481 F.2d 1204, *1212 (C.A.1973)To establish good cause, that party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v. Pepsico, Inc.*, Case No. 01-2009, 2002 WL 922082, at *1 (D.Kan. May 2, 2002) (quotations and citations omitted). General Dynamics Corp. v. Selb Mfg. Co., Id

  As the court has previously stated, Wal-Mart has not supported its Motion for Protective Order with any affidavits which explains why the requested information cannot be reasonably obtained. The only thing before the court is the conclusory statements of the Plaintiff included in the Motion and Brief that the requested information is onerous.

**Conclusion:**

  For the reasons stated above the court finds that the Motion to Quash the subpoenas

which seek the depositions of Karen Roberts and Robert Bray and two other subpoenas issued to Chris Callaway and Wal-Mart is hereby DENIED.

The court further finds that the Motion for Protective order is DENIED but that the time period to be encompassed by the discovery is October 31, 1998 through December 31, 2001 unless modified by the United States District Court for the Northern District of Ohio.

IT IS SO ORDERED this 28th day of December 2007.

                                        /s/ J. Marschewski
                                        HONORABLE JAMES R. MARSCHEWSKI
                                        UNITED STATES DISTRICT JUDGE